UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS


HINGHAM MUTAL FIRE
INSURANCE COMPANY, a/s/o
MICHAEL GOULD,
          Plaintiff

v.                            CIVIL ACTION NO.: 03-12391-WGY

DOUGLAS CUMMINS and
EDWARD SILVEIRA,
          Defendants

### DEFENDANT, EDWARD SILVEIRA'S CONCISE STATEMENT OF MATERIALFACTS OF RECORD AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED PURSUANT TO L.R. 56.1

The Defendant, Edward Silveira (hereinafter, "Silveira"), hereby submits, pursuant to L.R. 56.1, his concise statement of material facts of record as to which there is no genuine issue to be tried.

1.      On August 4, 2001, Melissa Macomber (hereinafter, "Macomber") sustained injuries as a result of an accident that occurred on a boat owned by Gould. [**Exhibit A**, Silveira's Answer and Counterclaim at ¶8, **Exhibit B**, Hingham's Answer at ¶8].

2.      On the date of the accident, Gould was married and held a reception at his house in Mashpee, Massachusetts afterwards. [**Exhibit C**, Trial Transcript, p.40, l.22-p.41, l.4].

3.      Gould owned a 17 foot boat. [**Exhibit C** p.41, l.7-11]. Gould purchased a tube the week before the wedding, and intended to supply his guests at his wedding the opportunity for tubing on his boat. [**Exhibit C**, p.46, l.18-24; p.45, l.3-6; **Exhibit D**, Deposition of Michael Gould, p.11, l.22 – p.12, l.1]

4.      Gould's boat had a tow bar system affixed to its deck at the stern of the boat. [**Exhibit C**, p.41, l.16-18]. The tow bar system was made up of a vertical center pole which slid down into a hole on the deck of the boat and two diagonal braces which attached to the top of the center pole and to locations on the deck for the aft (back) from the hole where the center pole inverted. [**Exhibit D** at p.12, l.13-p.13,

l.4] The end of the center pole which was inserted below the deck had a hole in it through which a pin could be placed perpendicular to the pole (hereinafter, "the safety pin"). [**Exhibit D** at p.16, l.4-16]. That safety pin, if in place, prevented the center pole from pulling out of the hole in the deck. [**Exhibit D** at p.16, l.12-16]. The rope pulling a person on the tube behind the boat would be attached to the tow system at the top of the center pole. [**Exhibit D** at p.13, l.5-9].

5. On the day before the wedding and Macomber's accident, Gould set up the towing system with the new tube. [**Exhibit C**, p.47, l.5-8; **Exhibit D**, p.12, l.6-12].

6. Gould did not insert the safety pin into the center pole, purportedly claiming that during the years prior he did not have to insert the safety pin, and he never had any problems. [**Exhibit C**, p.47, l.15-24].

7. While tubing the night before, the center pole pulled completely out of the holes in the deck of the boat on two occasions. [**Exhibit C**, p.50, l.24 – p.51, l.4; **Exhibit D** at p.23, l.7-14; p.24, l.14-15].

8. As of the night before the accident, Gould concluded that the center pole of the towing system could come out of the hole if the safety pin was not inserted, because it happened to him twice that night. [**Exhibit C**, p.51, l.5-8].

9. On the date of the accident, Silveira asked Gould if he could use the boat. [**Exhibit C**, p.69, l.15-18].

10. Gould gave Silveira permission to use the boat. [**Exhibit C**, p.50, l.9-12; p.289, l.2-9; Hingham's Amended Complaint **Exhibit E** at ¶15].

11. Gould did not limit or place any conditions on that permission in any way, nor did he warn anyone that the safety pin was not inserted or that the center bar could come out of the boat. [**Exhibit C**, p.50, l.16-23; p.57, l.9 – p.58, l.5; p.195, l.11-22].

12. Gould gave his unlimited and unconditional consent and permission to Silveira and Cummins to use and operate the boat for the purpose of towing wedding guests who wished to go tubing. [**Exhibit D**, p.18, l.11-17]

2

13. Gould never told Silveira or anyone else anything at all about the tow bar apparatus. [**Exhibit D**, p.16, l.20 – p.17, l.14]

14. Gould never provided any instructions, limitations, or restrictions of any kind with respect to Silveira and Cummins' use of the boat. [**Exhibit D**, p.16, l.15 – p.17, l.23; p.19, l.12-23] He merely informed Silveira of the typical pattern of traffic for watercraft on the pond and the location of some rocks to look out for. [**Exhibit D**, p.18, l.3-10]

15. From Gould's perspective, neither Silveira nor Cummins had any reason to believe that Gould's consent for them to use his boat on August 4, 2001 was limited or conditioned in any way. [**Exhibit D**, p.20, l.4-11]

16. On the date of the accident, the boat was taken out, Silveira operating the boat and Cummins acting as the "spotter" for the first three people who rode on the boat for tubing. [**Exhibit C** at p.198, l.22-24; p.197, l.14-17]. During that first cruise, one of the diagonal side bars vibrated. [**Exhibit C** p.198, l.18-21].

17. Cummins testified that the boat was taken to shore, the side piece was taken off, and Cummins, with the side piece in his hand, told Gould that the piece was shaking and that he would like to try to fix it. [**Exhibit C** p.199, l.2-15]. Cummins testified that Gould replied that they could look for tools in the shed, and he also indicated that he knew that the pole vibrates. [**Exhibit C**, p.199, l.24 – p.200, l. 4]. Gould does not deny that he had this coversation. [**Exhibit D** p.35, l.10 – p.37, l.2].

18. Silveira had nothing to do with those repairs. [**Exhibit C** at p.97, l.14- p.98, l.1; p.226, l.17-21].

19. At some point, they took the boat back out for more tubing. [**Exhibit C**, p.202, l.4-9]. Silveira drove, Cummins was the spotter, and a juvenile named Thomas Barker was tubing. [**Exhibit C**, p.202, l.15-23]. Macomber was also in the boat. [**Exhibit C**, p.202, l.10-12].

20. While Barker was tubing, the pole lifted and moved about one inch. [**Exhibit C**, p.206, l.12-22]. Silveira stopped the boat, and Cummins reseated the pole. [**Exhibit C**, p.208, l.16-20]. They

3

then changed tubers – Macomber was tubing, Silveira was spotting, and Cummins was driving. [**Exhibit C**, p.214, l.21 – p.215, l.14].

21.	After Macomber finished tubing, Silveira became the tuber, Macomber was the spotter, and Cummins remained the driver. [**Exhibit C**, p.215, l.22 – p.216, l.4]. It was at this point that the accident occurred. [**Exhibit C**, p.216, l.5-8].

22.	Macomber brought a negligence action against Gould for personal injuries sustained in the boating accident on August 4, 2001. [**Exhibits E and C**]

23.	At the time of the accident, Gould was insured under a policy of insurance issued by Hingham. [**Exhibit A** at ¶10; **Exhibit B** at ¶10].

24.	Hingham provided a defense and insurance coverage to Gould in the action commenced by Macomber, and at no time did Hingham reserve any right to deny insurance coverage or refuse to defend Gould with respect to that action. [**Exhibit A** at ¶¶13, 14; **Exhibit B** at ¶¶13, 14].

25.	A trial was held in the Barnstable County Superior Court on December 4-5, 2002. [**Exhibit C**]

26.	At that trial, counsel for Gould, the same counsel for Hingham in the instant matter, argued and attempted to prove that Silveira and Cummins were negligent, and that their negligence was a superseding intervening cause of Macomber's injuries. [**Exhibit C** p.36, l.11-19; p.37, l.7 – p.38, l.4; p.300, l.13-21; p.304, l.3-16].

27.	The trial judge in the Macomber action refused to give an instruction on superseding cause. The Court stated: "I don't believe there's sufficient evidence for a superseding cause." [**Exhibit C** at p.268, l.22-23].

28.	The jury in the Macomber action returned a verdict for Macomber against Gould in the amount of $300,000.00. [**Exhibit C** at p.359, l.1-24].

29.	Gould appealed the verdict [**Exhibit F**, Brief of Defendant-Appellant, but while that appeal was pending, the case was settled for $290,000.00. [**Exhibit G**, Release]. The parties filed a Satisfaction of Judgment [**Exhibit H**, Satisfaction of Judgment] and a Stipulation of Voluntary Dismissal,

4

whereby the parties stipulated that Gould's appeal was dismissed with prejudice and without costs [**Exhibit I** Stipulation of Voluntary Dismissal].

30. Hingham commenced the instant action seeking contribution from Silveira and Cummins in the amount of $96,666.66 each. [**Exhibit E**]. Hingham alleged that it paid $290,000.00 to settle the <u>Macomber</u> action, and that it is entitled to contribution in the amount of the pro-rata one-third share of the settlement from Silveira and Cummins as joint tortfeasors. [**Exhibit E**].

31. The Hingham Mutual Policy of Insurance contains the following language under "Definitions" section 6(e):

> Under Coverages L and M, **insured** also includes:
>
> e.   persons using or caring for watercraft or animals owned by an **insured** and to which this insurance applies  (This does not include persons using or caring for watercraft or animals in the course of **business** or without the owner's consent.)

[**Exhibit J**, Hingham Policy]

32. The Hingham Mutual Policy of Insurance contains the following language under "Liability Coverages:"

> **Coverage L – Personal Liability – We** pay, up to **our limit**, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.  **We** will defend a suit seeking damages if the suit resulted from **bodily injury** or **property damage** not excluded under this coverage.  **We** may make investigations and settle claims or suits that **we** decide are appropriate.  **We** do not have to provide a defense after **we** have paid an amount equal to **our limit** as a result of a judgment or written settlement.
>
> \*     \*     \*     \*     \*
>
> 6. Watercraft –
>
>     a. **We** pay for the **bodily injury** or the **property damage** which results from the maintenance, use, loading or unloading of:
>
> \*     \*     \*     \*     \*
>
> (2)  A watercraft that is not owned by or rented to **insured**

5

>if the loss is the result of the activities of an **insured.**
>
>\* \* \* \* \*
>
>(5) A watercraft which is powered by outboard motors which total 25 horsepower or less.
>
>>b. We **pay** for the **bodily injury** or the **property damage** which results from the maintenance, use, loading or unloading of a watercraft that is powered by outboard motors which total more than 25 horsepower, if:
>>
>>>1) Motors are listed on the declarations as insured for personal liability;
>>
>>\* \* \* \* \*
>>
>>**;** or
>>
>>>3) The motors are not owned by an **insured.**

[**Exhibit J**]

33. On or about July 22, 2003, counsel for Hingham sent demands to Silveira and Cummins for their "pro-rata share" of $96,666.66. [**Exhibit K**, 7/22/03 demand letters].

34. Hingham claimed to Silveira that it was entitled to contribution due to Silveira's alleged negligence, and that had Gould known that the bar had become loose while Barker was in the tube, he would have immediately insisted that the boating stop. [**Exhibit K**].

35. On August 13, 2003, a representative from Travelers Insurance Company, on behalf of Cummins, placed Hingham on notice that Cummins would be entitled to coverage and a defense under the Hingham policy issued to Gould for contribution claims arising out of the accident. [**Exhibit L**, 8/13/03 letter].

36. Hingham commenced the instant litigation on or about November 26, 2003. [See Complaint]

37. Subsequent to Hingham's commencement of this litigation, counsel for Silveira reiterated Silveira's position that the contribution claims are barred as a matter of law, because Silveira is an insured

under the Hingham policy issued to Gould due to the fact that he was operating the boat with Gould's permission. [**Exhibit M**, correspondence of February 11, 2004].

38. Silveira made demand that Hingham pay all of the costs and expenses of Silveira's defense of Hingham's claims against him, and agree to indemnify Mr. Silveira for any and all sums Silveira may be liable to pay under any judgment or settlement. [**Exhibit M**]. Silveira also placed Hingham on notice that its actions in failing to defend Silveira, failing to indemnify Silveira, and initiating the instant litigation seeking contribution is in clear violation of Hingham's contractual duties and established law, and constitutes unfair and deceptive acts contrary to the provisions of M.G.L. c.93A and M.G.L. c.176D. [**Exhibit M**].

39. Hingham responded to Silveira's demand on February 24, 2004, stating that "[m]aking unauthorized repairs while the boat was ashore and failing to inform or otherwise warn either [Macomber] or [Gould] about the problems with the towing system constituted negligent conduct that did not involve any 'use' of the boat. Moreover, to the extent that [Silveira] was negligent while using the boat, there is still no coverage because his conduct exceeded the scope of permissible use and therefore [Gould] did not consent to it. . . [because] Mr. Gould testified that had Mr. Silveira told him about the problems with the towing system he would have insisted that his guests stop boating." [**Exhibit N**, Correspondence of February 24, 2004].

40. Hingham does not believe that the alleged repairs made to the boat on the date of the accident are considered "maintenance" under its policy. [**Exhibit O**, Wilkin Deposition at p.193, l.17 – p.195, l.2].

41. Hingham has no written policies, procedures, or standards with respect to coverage determinations, but instead coverage determinations are reviewed and made on a case by case basis. [**Exhibit O** p.44, l.7-14; p.95, l.20 – p.96, l.4]

42. Hingham denied Silveira's demand for coverage, despite the fact that Hingham alleged in its Complaint that Gould gave Silveira permission to use the boat, and despite that fact that Hingham's

counsel said in open court in the <u>Macomber</u> case that Gould had given Silveira and Cummins permission to use the boat. [**Exhibit O** p.95, l.20 – p.96, l.4; p.69, l.23 -p.71, l.2; p.115, l.12-23].

43. Hingham was aware of Cummins' request for coverage in August of 2003, and the question of whether Cummins and Silveira were insureds under Hingham's policy were presented at that time, prior to Hingham's commencing the instant litigation. [**Exhibit O** p.152, l.10 – p.153, l.6]

44. Coverage under the Hingham policy would be invoked when the boat is being used with the consent of the owner, but Hingham denied Silveira's and Cummins' demands for coverage based on its determination that Silveira and Cummins went beyond the use, consent, and permission of Gould. [**Exhibit O** at p.163, l.9 – p.164, l.11].

45. Hingham defended and indemnified Gould in the underlying <u>Macomber</u> action, in which Macomber alleged that Gould was negligent in failing to properly maintain the boat and the towing system, failing to warn of the problems with the towing system and its lack of maintenance, and failing to repair the towing system and place the safety pin in place. [**Exhibit O** p.187, l.23 – p.188, l.18].

46. Hingham's practice is to provide a defense when a complaint is reasonably susceptible of an interpretation that the person demanding coverage is both an insured and entitled to coverage. [**Exhibit O** p.201, l.7-18].

        Defendant,
        Edward Silveira,
        By his attorneys

        s/ Dennis T. Grieco II
        _____
        Dennis T. Grieco II
        BBO#: 566676
        GIDLEY, SARLI, & MARUSAK, LLP
        One Turks Head Place, Ste. 900
        Providence, RI  02903
        Tel: (401) 274-6644
        Fax: (401) 3319304

## **CERTIFICATION**

W. Paul Needham, Esq.
W. Paul Needham. P.C.
10 Liberty Square
Boston, MA 02109

D. Michael Arter, Esq.
Law Offices of Brian M. Cullen
100 Summer Street, Ste. 201
Boston, MA 02110

  I hereby certify that on the 2nd day of September, 2004, I mailed a true copy of the within to counsel of record, as above.

                s/ Cidalia Mendes Lucci
                _____