UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

HINGHAM MUTAL FIRE
INSURANCE COMPANY, a/s/o
MICHAEL GOULD,
                    Plaintiff

v.                                      CIVIL ACTION NO.: 03-12391-WGY

DOUGLAS CUMMINS and
EDWARD SILVEIRA,
                    Defendants

**DEFENDANT, EDWARD SILVEIRA'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The Defendant, Edward Silveira (hereinafter, "Silveira"), hereby moves for summary judgment in

his favor on all claims of the Plaintiff, Hingham Mutual Fire Insurance Company, a/s/o Michael Gould

(hereinafter, "Hingham") against Silveira.  Hingham asserts a claim against Silveira for contribution and

seeks a declaratory judgment that Silveira is not a covered insured under a policy of insurance issued by

Hingham.  However, Hingham is not entitled to contribution from Silveira because, as set forth below,

Silveira is a covered insured of Hingham under a policy of insurance issued by Hingham to Michael

Gould (hereinafter, "Gould") in relation to this matter.  Silveira further moves for partial summary

judgment in his favor establishing Hingham's liability on Silveira's counterclaims for breach of

contract/duty to defend and indemnify, abuse of process, and violation of M.G.L. c.93A and c.176D, and

establishing its liability for attorney's fees and treble damages under M.G.L. c.93A, §9(3).

I.    **FACTS**

      A.      **The Underlying Action**

      On August 4, 2001, Melissa Macomber (hereinafter, "Macomber") sustained injuries as a result

of an accident that occurred on a boat owned by Gould. [St. ¶1][1]  On the date of the accident, Gould was

married and held a reception at his house in Mashpee, Massachusetts afterwards.  [St. ¶2].  Gould owned

---

[1] The paragraph references to "St." are to the Defendant, Edward Silveira's Concise Statement of Material Facts of
Record as to Which There is no Genuine Issue to be Tried Pursuant to L.R. 56.1.

a 17 foot boat. [St. ¶3]. Gould purchased a tube the week before the wedding, and intended to supply his guests at his wedding the opportunity for tubing on his boat. [St. ¶3]. Gould's boat had a tow bar system affixed to its deck at the stern of the boat. [St. ¶4]. The rope pulling a person on the tube behind the boat would be attached to the tow system at the top of the center pole. [St. ¶4]. The tow bar system was made up of a vertical center pole which slid down into a hole in the deck of the boat and two diagonal braces which attached to the top of the center pole and to locations on the deck, aft (back) from the hole where the center pole inserted. [St. ¶4] The end of the center pole which was inserted below the deck had a hole in it through which a pin could be placed perpendicular to the pole (hereinafter, "the safety pin"). [St. ¶4]. That safety pin, if in place, prevented the center pole from pulling out of the hole in the deck. [St. ¶4].

A number of people tubed on August 4, 2001 before Macomber. After Macomber finished tubing, Silveira became the tuber, Macomber was the spotter, and Cummins the driver of the boat. [St. ¶21]. It was at this point that the accident occurred when the center pole of the tow bar system apparently pulled up and out of its hole in the deck and forcefully struck Macomber in the jaw, causing her extensive injuries. [St. ¶21; **Ex. E** at ¶20].[2]

Macomber brought a negligence action against Gould for personal injuries sustained in the boating accident on August 4, 2001. At that time, Gould was insured under a policy of insurance issued by Hingham. [**Ex. A** at ¶10; **Ex. B** at ¶10]. Hingham provided a defense and insurance coverage to Gould in the action commenced by Macomber. [**Ex. A** at ¶¶13, 14; **Ex. B** at ¶¶13, 14].

A trial was held in the Barnstable County Superior Court on December 4-5, 2002. [St. ¶25] At that trial, counsel for Gould, the same counsel for Hingham in the instant matter, argued and attempted to prove that Silveira and Cummins were negligent, and that their negligence was a superseding/intervening cause of Macomber's injuries. [St. ¶26] Despite counsel's attempt, the trial judge refused to give an instruction on superseding cause. The Court stated: "I don't believe there's sufficient evidence for a superseding cause." [St. ¶27].

---

[2] References to exhibits are to those exhibits attached to the Defendant's L.R. 56.1 Statement of Material Facts.

The jury returned a verdict for Macomber against Gould in the amount of $300,000.00. [St. ¶28] Gould appealed the verdict, but while that appeal was pending, the case was settled for $290,000.00. [St. ¶29]. The parties filed a Satisfaction of Judgment and a Stipulation of Voluntary Dismissal, whereby the parties stipulated that Gould's appeal was dismissed with prejudice and without costs [St. ¶29]

**B.    Gould's permission and Silveira's use of the boat**

On the day before the wedding and Macomber's accident, Gould set up the towing system with the new tube, but he did not insert the safety pin into the center pole. [St. ¶5, 6]. While tubing the night before, the center pole pulled completely out of the holes in the deck of the boat on two occasions. [St. ¶7].

On the date of the accident, Silveira asked Gould if he could use the boat, and Gould gave him permission to use the boat. [St. ¶9, 10].  Hingham even admits in its First Amended Complaint that "Gould had given Silveira permission to take Gould's 17-foot recreational motorboat out on the freshwater pond behind his house during the reception." [**Ex. E** at ¶15].  Further, Gould's attorney conceded at the <u>Macomber</u> trial that Gould gave permission to go out onto the boat. [**Ex. C** p.289, l.2-9]. Gould also confirmed at his deposition in the present case that on August 4, 2001, <u>that he gave his unlimited and unconditional consent and permission to Ed Silveira and Douglas Cummins to use and operate the boat for the purpose of towing wedding guests who wished to go tubing.</u> [**Ex. D**, p.18, l.11-17]

At some point, the boat was taken out for tubing, Silveira driving, Cummins spotting, and a juvenile named Thomas Barker was tubing.  [St. ¶19].  Macomber was also in the boat.  [St. ¶19].  While Barker was tubing, the pole lifted and moved about one inch.  [St. ¶20].  Silveira stopped the boat, and Cummins reseated the pole.  [St. ¶20].  They then changed tubers – Macomber was tubing, Silveira was spotting, and Cummins was driving.  [St. ¶20].  Next, Silveira became the tuber, Macomber the spotter, and Cummins the driver, at which point the accident occurred. [St. ¶21]

C.     **The instant contribution action**

Hingham commenced the instant action seeking contribution from Silveira and Cummins in the amount of $96,666.66 each, their pro-rata one-third share of the settlement of the Macomber case.  [St. ¶30]. The Hingham Mutual Policy of Insurance defines "insured" as "persons using or caring for watercraft or animals owned by an insured and to which this insurance applies.  (This does not include persons using or caring for watercraft or animals in the course of business or without the owner's consent." [St. ¶31] The Hingham Policy also provides that Hingham will pay up to its limit "all sums for which an insured is liable by law because of bodily injury . . . caused by an occurrence to which this coverage applies."  [St. ¶32].  The Policy further provides that Hingham will "defend a suit seeking damages if the suit resulted from bodily injury . . . not excluded under this coverage."  [St. ¶32].  Also, as to watercraft, the Policy provides that Hingham will "pay for the bodily injury . . . which results from the maintenance, use, loading or unloading of . . . [a] watercraft that is not owned by rented to insured if the loss is the result of the activities of an insured. [St. ¶32]

On or about July 22, 2003, counsel for Hingham sent demands to Silveira and Cummins for their "pro-rata share" of $96,666.66. [St. ¶33]  Hingham claimed to Silveira that it was entitled to contribution due to Silveira's alleged negligence, and that had Gould known that the bar had become loose while Barker was in the tube, he would have immediately insisted that the boating stop. [St. ¶33]

On August 13, 2003, a representative from Travelers Insurance Company, on behalf of Cummins, placed Hingham on notice that Cummins would be entitled to coverage and a defense under the Hingham policy issued to Gould for contribution claims arising out of the accident.  [St. ¶35].  Despite this notice, Hingham commenced the instant litigation on or about November 26, 2003.

Subsequent to Hingham's commencement of this litigation, counsel for Silveira reiterated Silveira's position that the contribution claims are barred as a matter of law, because Silveira is an insured under the Hingham policy issued to Gould, due to the fact that he was operating the boat with Gould's permission.  [St. ¶37]  Silveira made demand that Hingham pay all of the costs and expenses of Silveira's defense of Hingham's claims against him, and agree to indemnify Mr. Silveira for any and all sums

4

Silveira may be liable to pay under any judgment or settlement. [St. ¶38]. Hingham responded on February 24, 2004, stating that "[m]aking unauthorized repairs while the boat was ashore and failing to inform or otherwise warn either [Macomber] or [Gould] about the problems with the towing system constituted negligent conduct that did not involve any 'use' of the boat. Moreover, to the extent that [Silveira] was negligent while using the boat, there is still no coverage because his conduct exceeded the scope of permissible use and therefore [Gould] did not consent to it. . . [because] Mr. Gould testified that had Mr. Silveira told him about the problems with the towing system, he would have insisted that his guests stop boating." [St. ¶39].

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "Summary judgment is proper when the pleadings, admissions, depositions, affidavits and answers filed in the case 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Murgo v. Home Depot U.S.A., Inc., 190 F.Supp.2d 248, 249 (D.Mass. 2002) (quoting Fed. R. Civ. P. 56(c)). Summary judgment is properly entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.    ARGUMENT

### A.    Hingham is not entitled to contribution from Silveira as he is an insured under the Hingham policy issued to Gould

"It is well established that an insurer cannot recover by means of subrogation against its own insured." Peterson v. Silva, 428 Mass. 751, 752; 704 N.E.2d 1163, 1164 (1999) (citations omitted) (emphasis added). The record evidence in this case clearly demonstrates that Silveira is an "insured" under the Hingham policy issued to Gould and entitled to coverage. No genuine issues of material fact

exist as to Silveira's status as an insured of Hingham under the policy issued to Gould. Hingham's attempt to obtain contribution from Silveira, its own insured, is prohibited under Massachusetts law.

Under the Hingham policy, coverage exists for Silveira if he is an "insured" as that term is defined in the Hingham policy. An "insured" is a person using or caring for watercraft with the owner's consent. [**Ex. J** at Definitions, §6(e)]. Pursuant to the Hingham policy, Hingham will pay for bodily injury resulting from the "maintenance, use, loading or unloading of . . . [a] watercraft that is not owned by or rented to insured if the loss is the result of the activities of an insured." [**Ex. J** at Incidental Liability Coverages §6(a)(2)]. Mr. Wilkin, on behalf of Hingham, confirmed that coverage would be invoked "under the definition of an insured where the boat is being used with the consent of the owner." [**Ex. O** at p.163 l.19-21]. Thus, it is undisputed that Silveira is entitled to coverage under the Hingham policy if he was using the boat with the consent of Gould and Macomber's injuries resulted from the use of the boat.

The unrefuted record evidence in this case is that Gould gave Silveira unconditional consent to use the boat that was not limited in any way. Hingham alleged in its Complaint that Gould gave Silveira consent to use the boat. [**Ex. E** at ¶15]. Gould's attorney admitted in open court that Gould gave Silveira permission to use the boat and to go tubing. [**Ex. C** p.289 l.2-9]. See Totten v. Merkle, 137 F.3d 1172 (9th Cir. 1998) (a statement by an attorney is generally admissible against the client). Gould also confirmed at his deposition in the present case that on August 4, 2001, he gave his unlimited and unconditional consent and permission to Ed Silveira and Douglas Cummins to use and operate the boat for the purpose of towing wedding guests who wished to go tubing. [**Ex. D**, p.18, l.11-17] He testified that he never told Silveira or anyone else anything at all about the tow bar apparatus or any problems with it. [**Ex. D**, p.16, l.20 – p.17, l.14] He explained that he never provided any instructions, limitations, or restrictions of any kind with respect to Silveira and Cummins' use of the boat. [**Ex. D**, p.16, l.15 – p.17, l.23; p.19, l.12-23] He merely informed Silveira of the typical pattern of traffic for watercraft on the pond and the location of some rocks to look out for. [**Ex. D**, p.18, l.3-10] He testified he gave no other information to Silveira and Cummins concerning the use of the boat for tubing on August 4, 2001. [**Ex. D**, p.16, l.15 – p.17, l.23] In fact, Gould testified that from his perspective, neither Silveira nor Cummins

had any reason to believe that Gould's consent for them to use his boat on August 4, 2001 was limited or conditioned in any way.  [**Ex. D**, p.20, l.4-11].  There is absolutely no evidence whatsoever that Gould placed any conditions or limitations on the use of the boat when he granted consent to Silveira to use the boat or at any time thereafter.

Hingham suggests that this express, unlimited, and unconditional consent should be considered constructively and retroactively withdrawn, because Gould would have stopped the use of the boat had he learned that the center pole moved while Tommy Barker was tubing.  [**Ex. N** at 2.]  That suggestion is nonsensical and contradicted by clear Massachusetts case law.

Although the issue of consent and permissive use does not appear to have been addressed by Massachusetts as it relates to the operation of boats, Massachusetts has addressed the issue as it relates to motor vehicles.  Under Massachusetts law, when an owner of an automobile grants general consent to a person to use the automobile, the person to whom that general consent is given is considered to be using the automobile with the owner's consent under all circumstances.  In Drescher v. Travelers Insurance Co., 359 Mass. 458; 269 N.E.2d 651 (1971), Drescher was operating a motor vehicle owned by Mahoney.  Id. at 458.  Mahoney had purchased the automobile for his son, Thomas, to be used while he attended college.  Id. at 459.  Drescher was Thomas's girlfriend, and was operating the vehicle with Thomas's permission, when she was involved in an automobile accident.  Id.  Drescher was sued in relation to the accident.  Id.  Travelers had issued a policy of insurance to Maloney, which defined "insured" as "any other person using the motor vehicle with the permission of the named insured . . . ."  Id.  Thomas and Maloney never discussed whether Thomas could permit anyone else to drive the car.  Id.  Maloney had given Thomas general permission to use the car, and had never restricted the use.  Id.  Moreover, Maloney did not know Drescher.  Id.  "The sole issue before us is whether [Drescher] qualifies as an 'insured' within the meaning of the terms of the policy so as to be entitled to its benefits."  Id.  The Supreme Judicial Court determined that Drescher was, in fact, an insured.

> In the present case, the elder Mahoney had given his son general dominion over the car.  No restrictions had been placed on its use.  Being away at college, the son, in effect, was solely responsible for its

> operation.  <u>Since the elder Mahoney appears to have delegated such
> broad responsibility to his son, it is reasonable to assume that the driving
> of the car by [Drescher] while the son was riding in it and for his
> purposes was impliedly sanctioned by the father.</u>

<u>Id.</u> at 461 (emphasis added).

In <u>Muzichuk v. Liberty Mutual Insurance Co.</u>, 2 Mass. App. Ct. 266; 311 N.E.2d 558 (1974),

Henry, the owner of the automobile, directed his son, Leonard, to take his brother Barry from their home

in Boston to a garage in Wellesley so that Barry could pick up another automobile that was being

repaired.  <u>Id.</u> at 269-270.  Henry told Leonard to take the automobile and to return home.  <u>Id.</u> at 270.

Barry drove the automobile to Wellesley with Leonard as a passenger.  <u>Id.</u>  On the way, they picked up

some friends.  <u>Id.</u>  When they arrived at the garage in Wellesley, Leonard drove back to Boston with his

friends and proceeded not home, but to an ice cream shop.  <u>Id.</u>  Leonard then proceeded to another ice

cream shop in Cambridge.  <u>Id.</u>  After leaving the ice cream shop in Cambridge, Leonard was involved in

an accident.  <u>Id.</u>

Prior to the day of the accident, Henry had permitted Leonard to drive the automobile, and had

not restricted his use of the vehicle except when Henry needed it.  <u>Id.</u> at 269.  In the relevant insurance

policy, the word "insured" included "any other person using the motor vehicle with the permission of the

named insured or such spouse, provided his actual operation . . . thereof is within the scope of such

permission."  <u>Id.</u>  The Court, in determining that Leonard was, in fact, an "insured" under the policy,

remarked:

> Leonard's use of the vehicle at the time of the accident was beyond what
> was needed to carry out his father's request to convey Barry to [the
> garage] and to return home.  It is clear that Leonard's use of the car that
> day to drive his friends to Cambridge was within the scope of the broad
> general permission Henry had given him to use the vehicle for his own
> business and pleasure.  Thus, in making use of the car, Leonard would
> have been an 'insured' within the terms of the policy unless (as the
> defendant argues and we assume without deciding) Henry had imposed a
> limitation on that permission by telling Leonard to return home as soon
> as he dropped Barry off in Wellesley Hills. . . .We are of the opinion that
> Henry's statement to that effect was not such a limitation on the general
> permission given to Leonard.

<u>Id.</u> at 270-71.

In <u>Dufour v. Arruda</u>, 299 Mass. 46; 11 N.E.2d 920 (1937), Arruda owned a motor vehicle which he permitted Andrade, who worked for Arruda, to drive the truck for work purposes, for personal errands, to and from his home, and for personal use on Sundays. <u>Id.</u> at 47. One Sunday, Mendes, Arruda's father in law, asked Arruda for the keys to the truck to go to a picnic. <u>Id.</u> Andrade went with Mendes, and while at the picnic, Andrade got drunk. <u>Id.</u> Andrade took the truck without Mendes' permission and got into an accident. <u>Id.</u> at 48. The Court remarked:

> Mendes appears to have taken the truck on the Sunday in question under the usual conditions which involved consent to its operation by Andrade as well as by Mendes. There was nothing in the terms of the bailment of Mendes that suspended the general permission given to Andrade to use the truck and to help Mendes with it. The operation of the truck by Andrade, though forbidden by Mendes, was found to be within the implied consent of Arruda.

<u>Id.</u>

In <u>Liberty Mutual Insurance Co. v. Tabor</u>, 407 Mass. 354; 553 N.E.2d 909 (1990), Liberty Mutual issued an insurance policy to Embassy, who rented a vehicle to Skinner. <u>Id.</u> at 355. Skinner negligently operated the motor vehicle and injured Tabor. <u>Id.</u> Liberty Mutual contended that Skinner was engaged in a 'prohibited use' of the rental vehicle at the time of the accident, and that she was not an 'insured' under the policy. <u>Id.</u> Under the Liberty Mutual policy, "insured" included "anyone else . . . while using with [Embassy's] permission a covered auto." <u>Id.</u> at 357. The rental agreement indicated that the insurance policy "shall not apply . . . to any liability of Customer or any driver . . . arising while the Vehicle is being used in violation of any of the limitations set forth in Paragraph 2." <u>Id.</u> Paragraph two listed "prohibited uses," and provided that a vehicle shall not be used "in violation of any federal, state, or local laws. (If the Customer [renter] is negligent or violates any of the state vehicle codes or is under the influence of alcohol or drugs, the Customer is totally responsible for all damages to the Vehicle and for any other claims by any other parties.)" <u>Id.</u> at 357-58.

Liberty Mutual claimed that Skinner was not an "insured" under the policy because she was not using the rental vehicle at the time of the accident with Embassy's permission because she engaged in a "prohibited use." <u>Id.</u> at 359. The Court found that Skinner was an insured under the policy. <u>Id.</u> at 360.

"Our cases suggest that the phrase 'while using with [Embassy's] permission' refers to the question whether an insured has been given 'authority to operate' or 'the right to possession' of an automobile for a specific purpose.  Skinner signed the rental agreement and was listed as an authorized driver.  Skinner's 'use' of the automobile was within the scope of Embassy's permission."  Id. (citations omitted).

The record evidence in the instant matter clearly demonstrates that Gould gave Silveira and Cummins permission to use his boat.  Gould placed absolutely no restrictions or conditions on that permission at any time whatsoever.  Under the well-established law in Massachusetts, Silveira and Cummins were using Gould's boat with his consent at the time of the accident, and anything that happened after that consent was given does not, in any way, modify or revoke the consent given, because Gould's consent to use the boat was unconditional and unrestricted.  Hingham's argument that Silveira and Cummins did not have Gould's consent at the time of the accident, because the consent would have been revoked if Gould had known of subsequent circumstances, is completely ridiculous, unsupported by any law, and completely without merit.  Thus, Silveira is an insured under the policy and the contribution claims against him are barred.

Incredibly, Hingham suggests that even if Silveira had consent to use the boat, he is not entitled to coverage under the policy, because Silveira's alleged (1) failure to inform Gould about the problems with the towing system (i.e. the Tommy Barker incident); (2) failing to warn Macomber about problems with the towing system; and (3) the performance of unauthorized repairs "did not involve any 'use' of the boat" that would be covered under the policy. [**Ex. N**]  Hingham's position is contradicted by the express terms of the policy and is completely ridiculous.

"Exclusions from coverage are to be strictly construed, and any ambiguity in [an] exclusion must be construed against the insurer."  Hingham Mutual Fire Insurance Co. v. Niagara Fire Insurance Co., 46 Mass. App. Ct. 500, 504; 707 N.E.2d 390, 393 (1999) (citations omitted).

The Hingham Policy provides that Hingham will pay up to its limit "all sums for which an insured is liable by law because of bodily injury . . . caused by an occurrence to which this coverage applies"  and that Hingham will "pay for the bodily injury or the property damage which results from the

maintenance, use, loading, or unloading of . . . A watercraft that is not owned by or rented to insured if the loss is the result of the activities of an insured." [**Ex. J** at 8 and 9, Liability Coverages, L and §6(a)(2)]. Thus, the terms of the policy provide coverage for sums owed as a result of bodily injuries resulting from the use or maintenance of a boat. Hingham claims Silveira is liable to contribute to the damages paid to Macomber as a result of her bodily injuries. Macomber was on the boat, while it was in use, when she was injured. Thus the facts clearly demonstrate that those injuries "result from the . . . use" of the boat. Accordingly, the claim against Silveira that he is liable for contribution to the compensation for those injuries is covered.

Moreover, Hingham's focus on the actions of Silveira and Cummins is misplaced. Under the terms of the policy, it is Macomber's bodily injuries that must result from the use or maintenance of the boat, not that Silveira's and Cummins' actions must qualify as maintenance or use of the boat. Nevertheless, common sense dictates that those actions involved the use and/or maintenance of the boat.

"Use" is not defined in the Hingham policy. "Use" is commonly defined as "the act or practice of employing something; . . . the privilege or benefit of using something." Webster's Ninth New Collegiate Dictionary at 1299 (1991). "Maintenance" is commonly defined as "the act of maintaining: the state of being maintained . . . . the upkeep of property or equipment." Webster's Ninth New Collegiate Dictionary at 718 (1991). "Maintain" is commonly defined as "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." Id. (emphasis added). There can be absolutely no doubt that Silveira and Cummins were using the boat when they allegedly failed to warn Macomber of the problems with the towing system, and that Cummins was using the boat when he made repairs to it, as the term "use" is commonly defined. Similarly, the alleged unauthorized repairs were done with the intention of upkeeping the boat, keeping the boat in an existing state of repair, and to preserve the boat, and specifically the tow bar system, from failure or decline. There can be no dispute that the alleged unauthorized repairs constituted "maintenance," thus affording coverage under the policy.[3]

---

[3] At his deposition, Mr. Wilkin, on behalf of Hingham, took the unbelievably ridiculous position that the alleged unauthorized repairs are not characterized as "maintenance." According to Mr. Wilkin, "maintenance" is "normal

Further, the suggestion that Silveira performed any repairs or that the repairs attempt by Cummins were unauthorized by Gould are erroneous and unsupported by any evidence. First, as he testified at trial, Silveira had absolutely nothing to do with the repairs. [**Ex. C** at p.97, l.14- p.98, l.1]. Cummins testified that he was primarily the one looking to reseat the pin. [**Ex. C** at p.226, l.17-21]. Second, the evidence demonstrates that the repairs that Cummins made were, in fact, <u>authorized.</u> Cummins removed the side piece from the boat, physically carried it to Gould, and told Gould that the piece was shaking and that he would like to try to fix it. [**Ex. C** p.199, l.2-15]. Gould indicated that he knew that the pole vibrates, and directed Cummins to the shed to look for tools in response to Cummins' statement that he would like to try to fix the side piece. [**Ex. C** p.199, l.24 – p.200, l.4]. During this exchange between Cummins and Gould, Gould held the side piece in his hand physically in the presence of Gould. [**Ex. C** at p.199, l.2 – p.200, l.16] Gould does not deny that he had this conversation. [**Ex. D** p.35, l.10 – p.37, l.2]. For Hingham to claim that "unauthorized repairs" precludes coverage for Silveira under the policy is absolutely ludicrous, as Silveira did not make any repairs, and the repairs were, in fact, authorized.

## B.    <u>Hingham's contribution claim against Silveira is barred by the doctrine of collateral estoppel</u>

"The judicial doctrine of collateral estoppel provides that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." <u>Alba v. Raytheon Co.</u>, 441 Mass. 836, 841; 809 N.E.2d 515, 521 (2004) (quotations and citations omitted). In order for the doctrine of collateral estoppel to apply, four elements must be met:

> (1) was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication?

---

run-of-the-mill cleaning," "caring for the boat," and changing a light bulb, but inserting the safety pin into the tow bar system would not constitute "maintenance." [**Ex. O** at p.193, l.17 – p.195, l.2].

Id., 431 Mass. at 842 (citations omitted).  "The purpose of the doctrine is to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments."  Id., 431 Mass. at 841 (quotation and citation omitted).

It is undisputed that there was a final judgment on the merits in the Macomber case.  Although Gould appealed the judgment, the parties voluntarily dismissed the appeal with prejudice [**Ex. I**] and filed a Satisfaction of Judgment in the Superior Court whereby Macomber acknowledged that the December 6, 2002 judgment had been satisfied in full. [**Ex. H**]  It is further undisputed that Hingham, the party against whom estoppel is being asserted, was in privity with Gould, a party to the Macomber case.  Hingham is Gould's insurer, and has commenced this action "a/s/o," or as subrogee of, Gould.

Lastly, the issue in the instant matter, Silveira's negligence, was decided in the Macomber case. In that case, Gould introduced evidence to attempt to prove that Silveira was negligent, and that his alleged negligence was an intervening superseding cause of Macomber's injuries. [**Ex. C** at p.37, l.7 – p.38, l.4; p.300, l.13-21; p.304, l.3-16].

Despite counsel's attempt to prove intervening and superseding cause, the trial judge refused to give an instruction on superseding cause.  The Court stated:  "I don't believe there's sufficient evidence for a superseding cause."  [**Ex. C** at p.268, l.22-23] In determining that there was insufficient evidence to establish a superseding cause, the Court clearly concluded that Silveira was not negligent or that Silveira's conduct was not causally related to Macomber's injury.  "Proximate cause may be determined as a question of law when there is no dispute as to the effect of the facts established."  Kent v. Commonwealth, 437 Mass. 312, 321; 771 N.E.2d 776, 777 (2002).

The fact that the Court in Macomber decided that Silveira was not negligent in relation to Macomber's injury is further evident by Gould's argument in his appeal of the jury verdict.  In his appeal brief, Gould detailed at length the evidence he believed established Silveira's alleged negligence.  [**Ex. F** at p.16, 18-19, 27-30].  Gould's desire to prove to the Appeals Court that Silveira was, in fact, negligent, further demonstrates that  the trial Court in Macomber refused to give an instruction on superseding cause based on the determination that Silveira was not negligent.

Finally, the issue of Silveira's alleged negligence was essential to the judgment in the prior adjudication. Had the Court determined that sufficient evidence of Silveira's negligence existed, it would have allowed the issue of superseding cause to go to the jury, and the jury may have rendered a verdict in Gould's favor. Moreover, counsel for Gould specifically asked the jury, in his closing argument, to concentrate on the issue of proximate cause, and invited the jury to decide that the negligence of the people in the boat (Silveira and Cummins) was the cause of Macomber's injuries. [**Ex. C** at p.304, l.3-16]. Yet, the jury determined that Gould was negligent and a proximate cause of Macomber's injuries. Thus, it is undisputed that the issue of whether Silveira was negligent was essential to the judgment in the Macomber case.

For these reasons, Hingham's claim for contribution against Silveira is barred by the doctrine of collateral estoppel, as the Court in the Macomber case has already determined that Silveira was not negligent. Accordingly, summary judgment must enter in favor of Silveira as to Hingham's claims against him.

C.    **Silveira is entitled to summary judgment in his favor as to his counterclaims against Hingham**

1.    **Breach of Contract/Duty to Defend and Indemnify**

Hingham owes Silveira a duty to defend and indemnify against the claim for contribution that it has commenced against Silveira. "The interpretation of an insurance contract and the application of policy language to known facts present questions of law for the judge to decide." Herbert A. Sullivan, Inc. v. Utica Mutual Insurance Co., 439 Mass. 387, 394; 788 N.E.2d 522, 530 (2003). Under Massachusetts law, an insurer's duty to defend is clear:

> The question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.

Id. (emphasis added). Moreover, "the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the

facts alleged in the complaint specifically and unequivocally make out a claim within the coverage."  Id. (quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 319; 458 N.E.2d 338 (1992)).

In the instant matter, as set forth above, Silveira is an insured under the Hingham policy issued to Gould. Under the express terms of the Hingham policy, Hingham is obligated to pay, up to its limit, all sums for which Silveira is liable by law because of bodily injury caused by an occurrence, and Hingham is further obligated to defend a suit seeking damages if the suit resulted from bodily injury. [St. ¶32]

Hingham's Amended Complaint alleges that Cummins and Silveira acted negligently "[i]n the course of using the boat and through other acts and omissions unrelated to their use of the boat. . . ."  [**Ex. E** at ¶19] (emphasis added).  The Amended Complaint alleges that Macomber sustained personal injuries as a direct and proximate result of the negligence of Cummins and Silveira.  [**Ex. E** at ¶20].  The Amended Complaint alleges that Hingham paid $290,000 to settle Macomber's case against Gould.  [**Ex. E** at ¶21-23].  The Amended Complaint alleges that "Silveira's negligence makes him a joint tortfeasor with Gould and Cummins."  [**Ex. E** at ¶29].

Hingham's Amended Complaint sets forth allegations claiming that Silveira is liable by law to pay damages for his negligence in causing Macomber's personal injuries.  This is precisely the type of claim that falls within the coverage afforded by the Hingham policy and that triggers Hingham's duty to defend Silveira.  It in fact echoes the very same claims Macomber made against Guld in the underlying case which were defended and covered by Hingham.  At the very least, the Amended Complaint shows a possibility that the claim falls within coverage, thus triggering Hingham's duty to defend.  See Herbert A. Sullivan, Inc., 439 Mass. at 394.

Moreover, even if the alleged unauthorized repairs somehow are not afforded coverage under the Hingham policy (a contention refuted by Silveira), Hingham still owes Silveira a defense as to those claims because the alleged failure to warn is clearly and undeniably covered under the policy.  "[U]nder Massachusetts law, if an insurer has a duty to defend one count of a complaint, it must defend them all."  Mt. Airy Insurance Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997) (citation omitted) (emphasis added).

No genuine issue of any material fact exists as to Hingham's duty to defend Silveira in this matter, and summary judgment must enter in favor of Silveira as a matter of law.

Moreover, Silveira is entitled to his attorney's fees and expenses incurred in defending Hingham's ridiculous position and refusal to defend. "Massachusetts has adopted the 'American rule' which allows successful litigations to recover their attorney's fees and expenses only in a limited class of cases. One exception to the 'American rule' is the case in which an insured successfully establishes in a declaratory judgment action the insurer's duty to defend." Herbert A. Sullivan, Inc., 439 Mass. at 397. Having established Hingham's duty to defend, Silveira is entitled to attorney's fees and expenses incurred in this action.

### 2.    Violation of M.G.L. c.93A and c.176D

By commencing the instant litigation, and by continuing to pursue it with the knowledge that, at the very least, its claims against Silveira were reasonably susceptible of coverage under its own policy of insurance and by unreasonably denying coverage and defense to Silveira, Hingham blatantly violated the provisions of M.G.L. c.93A and c.176D.

M.G.L. c.93A provides, in pertinent part:

> Any person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action . . .

M.G.L. c.93A, §9(1).

M.G.L. c.93A, §2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Id.

M.G.L. c.176D, §2 provides: "No person shall engage in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to section six of this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Id. Unfair methods of competition and unfair or deceptive acts or practices in the business of insurance include statements which misrepresent the benefits, advantages, conditions, or terms of an insurance

16

policy (M.G.L. c.176D, §3(1)(a)), and unfair claim settlement practices involving misrepresenting

pertinent facts or insurance policy provisions relating to coverages at issue (M.G.L. c.176D; §3(9)(a)).

        In order to prevail under a M.G.L. c.93A claim, the claimant must show that the respondent's

actions "(1) fall within the penumbra of some common-law, statutory, or other established concept of

unfairness; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) caused substantial injury."

Interstate Brands Corp. v. Lily Transportation Corp., 256 F.Supp.2d 58, 61 (D.Mass. 2003) (quotations

omitted).  "One picturesque way of describing c.93A liability is that the objectionable conduct must attain

a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world

of commerce."  Id. (quotation omitted).  A violation of M.G.L. c.176D, §3 constitutes a violation of

M.G.L. c.93A.  See M.G.L. c.93A, §9(1).

        In the instant matter, Hingham's conduct demonstrates that Hingham breached its contract and

duty to defend Silveira, seeks to obtain contribution from Silveira, its own insured, in clear violation of

well established Massachusetts law, and continues to proceed with its ridiculous and unfounded position.

        First, Hingham undeniably takes the position that Gould gave consent to Silveira to use the boat.

Gould's counsel in the Macomber case (Hingham's counsel in the instant case) admitted in open Court

that there is "no dispute" that Gould gave Silveira and Cummins permission to use the boat.  [**Ex. C** p.289

l.2-9].  Hingham alleges in its Amended Complaint in the instant matter that Gould gave Silveira

permission to use the boat. [**Ex. E** at ¶15]  Hingham nowhere points to any facts or any other evidence

that Gould's consent was conditional or limited in any way.  Hingham also knew that, under its own

policy, coverage would be triggered if Silveira was an insured under the policy, operating the boat with

Gould's consent. [**Ex. O** at p.163, l.9 –p.164, l.11].

        Despite knowledge of Gould's unconditional and unlimited consent, Hingham adopted the

ridiculous position that Gould's consent was somehow revoked when Silveira failed to warn of the

problems with the tow bar, and when unauthorized repairs were made to the boat.  Hingham concocted

this ludicrous argument, when it knew or certainly should have known that (1) it provided a defense to

Gould in the Macomber action against the same allegations of failure to warn and improper maintenance

of the boat; (2) Silveira had absolutely nothing to do with the repairs, and, even if he did, the repairs were underline(authorized) by Gould; and (3) well established law in Massachusetts provides that when general permission to use a motor vehicle is granted, without specific conditions or limitations attached to the permission, subsequent actions relating to the use of the motor vehicle do not affect or revoke the initial consent given.  It appears that Hingham adopted this untenable position of revoked consent only in an effort to avoid its coverage obligations to Silveira under its policy.

Second, Hingham was aware that there was a potential claim for coverage by Cummins under the policy issued to Gould as of August 13, 2003 or shortly thereafter, and, at that time, made a determination based on Hingham's investigation, depositions, statements, and Macomber trial transcripts, and without the benefit of any written standards, policies, or procedures, that Cummins and Silveira were not insureds under the policy.  [**Ex. O** at p.69, l.23 –p.71, l.2].  This determination was "[b]ased on the fact that they are not named insureds or additional insureds named on the declarations page, no policy premium has been paid to us by either of these individuals with respect to the definition of an insured, they were using -- or their involvement with this water craft exceeded the permissive use granted by our insured."  [Id.] Despite all of these facts and circumstances which lead to the only reasonable conclusion that Silveira is an insured entitled to coverage, Hingham commenced the instant litigation, with knowledge that it was not entitled to seek contribution from its own insureds.  See Peterson, 428 Mass. at 752.

Third, as set forth above, Hingham does not have in place written policies, procedures, or standards with respect to coverage determinations, but instead coverage determinations are reviewed and made on a case by case basis.  Hingham denied coverage to Silveira when, at the very least, its claims against Silveira and Cummins were reasonably susceptible of coverage under the policy, thus clearly and undeniably triggering its duty to defend, see Herbert A. Sullivan, Inc., 439 Mass. at 394, and when it actually afforded coverage to Gould for the same accident and the same claim of failure to warn as Macomber's allegations against Gould.

Hingham's conduct clearly rises to the level of rascality required to succeed on a M.G.L. c.93A claim, as its decision to deny coverage and its pursuit of contribution is contrary to its own policy

provisions, the relevant facts of this case, and well established Massachusetts law. Hingham continues to maintain its ridiculous and unfounded position denying coverage, despite demands for coverage. Moreover, Hingham's conduct violates M.G.L. c.176D, §3(9)(a) by misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. Hingham blatantly misrepresents the facts relating to Gould's consent to Silveira to use the boat by claiming that Silveira's conduct exceeded the scope of consent given by Gould, when the undisputed evidence demonstrates that Gould's consent was unconditional and unlimited. Hingham's justification for claiming that Silveira is not an insured under the policy is based upon a misrepresentation of the facts surrounding the nature of Gould's consent.

As a result of Hingham's violations of M.G.L. c.93A and c.176D, Silveira has sustained substantial injury. Silveira has incurred attorney's fees and expenses in defending this baseless and meritless lawsuit. Moreover, Hingham's violations of M.G.L. c.93A can only be characterized as willful and knowing violations, thus warranting double or treble damages and attorney's fees. See M.G.L. c.93A, §9(3).

Although questions of reasonableness are generally questions of fact, those questions may be resolved by the Court on a motion for summary judgment when the evidence and the reasonable inferences drawn can only lead to one reasonable conclusion. See Magarian v. Hawkins, 321 F.3d 235, 238 (1st Cir. 2003) (In a negligence action for personal injuries, the District Court removed the issue of breach of duty from the jury in a motion for summary judgment.) The instant matter is not simply a case where an insurance company has denied coverage to its insured, and the reasonableness of that decision is solely at issue. Rather, as the unrefuted record evidence establishes, this is a case where Hingham sued its own insured for contribution under a ludicrous interpretation of its own policy and disingenuous interpretation of the undisputed relevant facts, and then denied coverage to its insured for the claims brought against him without the guidance of any written policies, standards, or procedures, or investigation that would be performed that Hingham concedes it would have performed if Gould had given unconditional consent to use the boat, which he did. The facts of this case lead to only one conclusion – that Hingham's acts were unfair and deceptive and committed knowingly and willingly.

For the reasons set forth above, this Court should enter summary judgment in Silveira's favor as to its M.G.L. c.93A and c.176D claims.

### 3.    Abuse of Process

"To constitute a cause of action for abuse of process, 'it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"  Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389; 340 N.E.2d 484, 484 (1975) (quoting Quaranto v. Silverman, 345 Mass. 423, 426; 187 N.E.2d 859, 861 (1963)).  For all of the above stated reasons, it is clear that Hingham commenced the instant litigation for an ulterior or illegitimate purpose.

## IV.    CONCLUSION

For the reasons set forth above, this Court should enter summary judgment in Silveira's favor on Hingham's claims against him, and enter partial summary judgment in Silveira's favor on his counterclaims against Hingham, establishing Hingham's liability to Silveira and its obligation to pay attorney's fees and treble damages under M.G.L. c.93A, §9(3).[4]

<div style="margin-left: 50%;">

Defendant,
Edward Silveira,
By his attorneys


s/ Dennis T. Grieco II
_____
Dennis T. Grieco II
BBO#: 566676
GIDLEY, SARLI, & MARUSAK, LLP
One Turks Head Place, Ste. 900
Providence, RI  02903
Tel: (401) 274-6644
Fax: (401) 3319304

</div>

---

[4] Counsel certifies pursuant to L.R. 7.1(A)(2) that he has conferred with opposing counsel in an attempt to resolve the issues set forth in this motion for summary judgment.

## <u>CERTIFICATION</u>

W. Paul Needham, Esq.
W. Paul Needham. P.C.
10 Liberty Square
Boston, MA 02109

D. Michael Arter, Esq.
Law Offices of Thomas Niarchos
100 Summer Street, Ste. 201
Boston, MA 02110

     I hereby certify that on the 2nd day of September, 2004, I mailed a true copy of the within to counsel of record, as above.

S/ Cidalia Mendes Lucci
_____